JOCELYN SAMUELS
Acting Assistant Attorney General
Civil Rights Division
STEVEN H. ROSENBAUM
Chief, Housing and Civil Enforcement Section
JON SEWARD
Deputy Chief
NANCY F. LANGWORTHY
ANDREA K. STEINACKER
Trial Attorneys
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W. — G Street
Washington, D.C. 20530
Telephone: (202) 616-8925
Fax: (202) 514-1116
nancy.langworthyAusdoj.gov
andrea.steinacker@usdoj.gov

ANDRE BIROTTE JR.
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division
ROBYN-MARIE LYON MONTELEONE (State Bar No. 130005)
Assistant United States Attorney
Assistant Division Chief,
Civil Rights Unit Chief, Civil Division
Room 7516 Federal Building
300 North Los Angeles Street
Los Angeles, CA 90012
Telephone: (213) 894-2458
Robby.Monteleone@usdoj.gov
Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 5:12-cv-01966-TJH-SP |
| v. | ) | |
| | ) | **AMENDED CONSENT DECREE** |
| CITY OF SAN JACINTO, CALIFORNIA | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**BACKGROUND**

1.     The United States initiated this action on November 9, 2012, against the City of San Jacinto, California ("San Jacinto," the "City," or the "Defendant"). In its Complaint, the United States alleges that the Defendant violated the Fair Housing Act, as amended, 42 U.S.C. §§ 3601, et seq. (the "FHA") and Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131, et seq. (the "ADA"), and its implementing regulations, 28 C.F.R. Part 35, on the basis of disability by restricting the operation of group homes for persons with disabilities in the City. Specifically, the United States alleges that the Defendant violated the FHA and the ADA by: 1) amending and applying its zoning code with the intention and effect of excluding group homes for persons with disabilities from single- and two-family zones and unreasonably restricting them in multi-family zones; 2) singling out group homes for persons with disabilities for enforcement activities under the amended zoning code and other laws; and 3) conditioning requests for reasonable accommodation to operate group homes for persons with disabilities in residential zones on the acceptance of onerous and unjustified requirements.

2.     The United States alleges that the Defendant's actions described in the Complaint violated: Section 804(0(1) of the FHA, 42 U.S.C. § 3604(0(1), by making housing unavailable because of disability;[1] Section 804(0(2) of the FHA, 42 U.S.C. § 3604(0(2), by discriminating in the terms, conditions, or privileges of housing because of disability; Section 804(0(3)(B) of the FHA, 42 U.S.C. § 3604(0(3)(B), by failing or refusing to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may have been necessary to afford persons with disabilities an equal opportunity to use and enjoy a dwelling; and Section 818 of the FHA, 42 U.S.C. § 3617, by coercing, intimidating, threatening, or interfering with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights under the FHA. The United States also alleges that the Defendant violated Section 202 of the ADA, 42 U.S.C. § 12132, by excluding persons with disabilities from participating in and denying them the benefits of services, programs, or activities of San Jacinto and failing to make reasonable modifications in its rules, policies, practices,

---

[1] The Decree uses the term "disability" as the equivalent of the term "handicap" in the FHA. *See* 42 U.S.C. § 3602(h).

or services, which excluded persons with disabilities from participating in or denied them the benefits of services, programs, or activities of San Jacinto.

3.      The United States further alleges that the Defendant's conduct constitutes a pattern or practice of discrimination and a denial of rights to a group of persons that raises an issue of general public importance in violation of Section 814(a) of the FHA, 42 U.S.C. § 3614(a), or a discriminatory housing practice under Section 814(b) of the FHA, 42 U.S.C. § 3614(b).

4.      The City filed an answer to the complaint. In its answer, the City denies the allegations of the United States and contends that it did not violate the various statutes described by the United States in its allegations.

5.      On December 12, 2012, group home operators and/or owners Rajeeyah Bilal-Varney, Yvonne Carter, Aurora Beltran, and Deirdra Hampton initiated the related matter of *Bilal-Varney v. City of San Jacinto,* ED-CV-12-02191. The action filed by these plaintiffs makes allegations similar to those alleged by the United States. The City filed an answer to the complaint filed by these plaintiffs denying the allegations. The Court entered an order consolidating the two actions for discovery on February 26, 2013. Plaintiff Deirdra Hampton has since been dismissed from the lawsuit. Plaintiffs Rajeeyah Bilal-Varney, Yvonne Carter, and Aurora Beltran are referred to in this document as the "Private Plaintiffs."

6.      The United States, the Private Plaintiffs and the Defendant desire to avoid costly and protracted litigation and have voluntarily agreed to resolve the United States' and Private Plaintiffs' claims against the Defendant by entering into this Consent Decree, as indicated by the signatures below.

## I. FACTUAL STIPULATIONS

The parties agree to the following facts:

7.      The City of San Jacinto is a municipality in Riverside County, California, and is responsible for enacting and enforcing zoning and land use laws within its jurisdiction.

8.      On October 3, 2008, the City Council amended the San Jacinto Zoning Code ("the Zoning Code") by approving Ordinance 08-14 ("the Ordinance"), which was passed by unanimous vote of the Council.

9. The Ordinance amended the Zoning Code's definition of "Group Home" or "Group Housing" to "[a] residence or dwelling, other than a hotel, wherein two (2) or more rooms, with or without individual cooking facilities, are rented to individuals under separate rental agreements or leases, either written or oral, whether or not an owner, agent, or rental manager is in residence, in order to preserve the residential character of the neighborhood." The group home definition from the Ordinande was codified at Section 2.30 of the San Jacinto Zoning Code.

10. The Ordinance specifically exempted certain State-licensed congregate living facilities, such as "community care facilities," from its definition of "group homes," making those with six or fewer residents permitted uses in residential zones.

11. Prior to and after the City's enactment of the Ordinance, the City's Zoning Code defined "family" as "an individual or two (2) or more persons related by blood, marriage or legal adoption, or a group of not more than 6 persons who are not related living together as a single house-keeping unit in a dwelling unit." This definition was codified at Section 2.27 of the Zoning Code, but has subsequently been amended.

12. Under the Zoning Code as amended by the Ordinance, group homes that were not licensed by the State were not permitted-by-right in any zoning district within the City. Such homes could operate in multi-family (R-3) zones, if they sought and were granted a conditional use permit.

13. On November 4, 2008, the City conducted an early morning investigation of nineteen homes. Government officials, including armed and uniformed members of the Riverside County Sheriff's Department, appeared at the homes.

14. After inquiring at the premises about the nature of the homes, the officials entered homes and interrogated the residents individually from a previously-prepared questionnaire, intended to determine, among other things, whether the residents were disabled. The questions included why the residents were in the home, whether they were or had ever been a drug addict or alcoholic, whether they were suffering from any form of mental illness, and if so, what type, whether they were taking "psych" medications, and if so, what kind, whether they were in treatment programs, whether they or other residents were currently using illegal drugs or alcohol, whether they were on parole or probation, whether they were registered sex offenders, whether they were collecting SSI or disability benefits, and

1    whether medical treatment, counseling, and drug treatment were provided on site. The officials did not

2    enter, inspect, or question the residents of homes they determined were not group homes.

3        15.    After the November 2008 investigation, the City continued to cite providers of group

4    homes for persons with disabilities for illegal operation of a group home in a residential zone. The

5    City did not take any judicial action to enforce citations issued for violation of the Ordinance.

6        16.    Following the November 8, 2008 inspection, the City repeatedly visited some group

7    homes for persons with disabilities and cited the operators of the homes for violations of the Ordinance

8    and other laws.

9        17.    On March 29, 2011, Aurora Beltran sent a request to the City for a reasonable

10   accommodation to continue operating a group home for persons with disabilities in the City.

11   Following her request, Ms. Beltran was cited by the City for operating an "illegal" group home in

12   a residential zone.

13       18.    On May 16, 2011, Rajeeyah Bilal-Varney, whose home was included in the November

14   2008 inspection and who has been issued citations by the City for illegal group home and other alleged

15   violations, sent a request to the City for a reasonable accommodation to operate a group home for

16   persons with disabilities in a residential zone in the City.

17       19.    The City informed the two providers that it did not yet have a process established by

18   ordinance for deciding reasonable accommodation requests at that time. Regardless, the City offered

19   to grant each provider a reasonable accommodation. That offer, however, was conditioned on the

20   acceptance of terms the providers found to be unacceptable.

21       20.    The group homes investigated and/or cited by the City before and after the

22   November 2008 investigation are "dwellings" within the meaning of 42 U.S.C. § 3602(b).

23                               **II. PROCEDURAL HISTORY**

24       21.    Based on the investigation and other actions by the City, Ms. Bilal-Varney filed a

25   complaint with the Department of Housing and Urban Development ("HUD") on or about December

26   2, 2008, alleging discrimination in housing on the basis of disability in violation of the Fair Housing

27   Act. On or about July 6, 2009, HUD referred the complaint to the Department of Justice pursuant to

28   42 U.S.C. § 3614(a) of the Act.

22.   Based on enforcement and other actions by the City, Ms. Beltran filed a complaint with HUD pursuant to 42 U.S.C. § 3610(a) of the Fair Housing Act, alleging discrimination in housing on the basis of disability. On or about June 12, 2012, HUD referred the complaint to the Department of Justice pursuant to 42 U.S.C. § 3610(g)(2)(C) of the Act.

Therefore, it is hereby **ORDERED, ADJUDGED, and DECREED** as follows:

### III. GENERAL NONDISCRIMINATION PROVISIONS

23.   The Defendant, its agents, employees, successors, and all persons in active concert or participation with it, shall not:

a.   Discriminate in the sale or rental, or otherwise make unavailable or deny, a dwelling to any person because of a disability;

b.   Discriminate in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, on the basis of disability;

c.   Adopt, maintain, enforce, or implement any zoning or land use laws, regulations, policies, procedures or practices that discriminate on the basis of disability in violation of the FHA and the ADA;

d.   Refuse to make reasonable accommodations in the application of rules, policies, practices or services when such accommodations may be necessary to afford a person or persons with disabilities an equal opportunity to use and enjoy a dwelling;

e.   Coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the FHA.

### IV. SPECIFIC INJUNCTIVE RELIEF

24.   The Defendant shall not impose restrictions on housing for persons with disabilities not imposed on housing for an equal or greater number of persons without disabilities. Actions prohibited by this Decree include, but are not limited to, the imposition, through any provision or practice, of numerical occupancy limits on group housing for unrelated persons with disabilities that is more restrictive than numerical occupancy limits for families or other unrelated persons.

25.     The Defendant has adopted the ordinances attached hereto as Exhibits A and B. The ordinance attached as Exhibit A establishes a new zoning classification, "Group Homes for Persons with Disabilities," and Exhibit B amends the City's reasonable accommodation procedure.

26.     The Defendant shall maintain records of all oral and written requests for reasonable accommodation or modification and the Defendant's responses thereto for a period of three (3) years following the date of the request and the Defendant's response, as applicable.

27.     The Defendant shall not impose any additional fees, costs, or otherwise retaliate against any person who has exercised his or her right under the FHA or ADA to make one or more requests for reasonable accommodation or modification.

28.     Immediately upon entry of this Decree, the Defendant shall cease any efforts to close or bring other enforcement actions against housing for persons with disabilities operated in accordance with the FHA and the ADA, including but not limited to homes for persons with disabilities operated in the City by Aurora Beltran and Rajeeyah Bilal-Varney located at 325 East Third Street and 1835 Rogers Way, respectively, so long as these homes continue to operate in compliance with all laws including the ordinance attached as Exhibit A. The Defendant shall not otherwise discourage or hinder the dwellings' operation as group homes for persons with disabilities. Nothing in this provision prohibits Defendant from enforcing its laws in a neutral and nondiscriminatory manner.

29.     Within thirty (30) days after the entry of this Decree, Defendant shall designate a City employee as a Fair Housing Compliance Officer. The Officer shall have the responsibility to receive complaints of alleged housing discrimination against the City and coordinate the City's compliance with this Decree.

30.     The Defendant shall not enforce other laws, including, but not limited to, nuisance laws and building codes, based on the disability or perceived disability of one or more occupants of the dwelling.

## V. FAIR HOUSING TRAINING

31.     Within sixty (60) days following entry of this Consent Decree, the Defendant shall provide training on the requirements of the Decree, as well as the FHA and the ADA, in particular, those provisions that relate to disability discrimination and zoning, to all members of the City Council,

all members of the Planning Commission, the Fair Housing Compliance Officer, employees of the Code Enforcement Department with enforcement responsibilities, and all other employees and agents of the City, including but not limited to law enforcement officials employed by the Riverside County Sheriff's Department, with authority to make recommendations or decisions relating to or affecting zoning matters, in accordance with the following subparagraphs:

    a.    The initial training shall be conducted in person by a qualified third party approved in advance by the United States. The trainer shall not be connected to the Defendant or its officials, employees, agents or counsel. Training materials intended for use in the training must be submitted to the United States for approval at least thirty (30) days in advance of the training. Any expense associated with this training shall be borne by the Defendant;

    b.    The training shall be videotaped and shown to newly elected, appointed, or hired individuals covered by this section. The training of each new official or staff member shall take place within thirty (30) days following the date he or she commences service or employment;

    c.    The Defendant shall provide a copy of this Decree to each person required to receive the Fair Housing training;

    d.    The Defendant shall provide to the United States, in the form of Exhibit C, a Certification of Training and Receipt of Consent Decree executed by each trainee confirming: i) his or her attendance; ii) the date of the training; and iii) his or her receipt and comprehension of the Decree.[2]

## VI. REPORTING AND RECORD KEEPING

32.    Within ten (10) days following his or her designation, the Defendant shall notify the United States in writing of the name, business address, and business telephone number of the Fair

---

[2] All documents or other communications required by this Decree to be sent to Counsel for the United States shall be addressed as follows: Chief, Housing and Civil Enforcement Section, Civil Rights Division, United States Department of Justice, 950 Pennsylvania Avenue, N.W. - G Street, Washington, D.C. 20530, Attn: DJ# 175-12C-626, or as otherwise directed by the United States.

Housing Compliance Officer described in Paragraph 29, above. Should the identity of the Fair Housing Compliance Officer change during the term of this Decree, the Defendant will, within ten (10) days of such change, notify the United States in writing of the name of the new officer and his or her contact information.

33.     Within thirty (30) days after the initial training referenced in Paragraph 31(a), the Defendant shall submit all executed copies of the Certification of Training and Receipt of Consent Decree (Exhibit C), referenced in Paragraph 31(d).

34.     The Defendant shall provide the United States with a copy of any proposed change to the City's zoning code that relates to or affects in any way housing for persons with disabilities, at least ninety (90) days prior to the proposed adoption of the proposed change by the Defendant.

35.     The Defendant shall prepare biannual compliance reports that detail all actions it has taken to fulfill its obligations under the Decree. The Defendant shall submit its first report to the United States within six (6) months of the entry of this Decree, and subsequent reports every six (6) months thereafter for the duration of the Decree, except that the final report shall be delivered to the United States not less than sixty (60) days prior to the expiration of the Decree.

36.     The Defendant shall include the following information in the compliance reports:

a.     the name, address, and telephone number of the Fair Housing Compliance Officer, referenced in Paragraph 29, above, as of the date of the report;

b.     copies of the training certification forms referenced in Paragraph 37(d), above, not yet provided to the United States;

c.     any oral or written complaint received subsequent to the preceding report alleging discrimination in housing, including discrimination in zoning or land use actions or practices, because of disability. The Defendant shall indicate any action it took in response to the complaint, and shall provide all pertinent documents, including a copy of the complaint, any documents filed with the complaint, and any written response to the complaint by the City;

d.     a summary of each zoning request or application related to housing for persons with disabilities (including those for building permits, site plans, variances, or reasonable

1    accommodations) for which the City has made a determination, indicating: i) the date

2    of the application; ii) the applicant's name; iii) the applicant's current street address; iv)

3    the street address of the proposed housing; v) the City's decision(s) regarding the

4    matter, including any decision on appeal; vi) the reasons for each decision, including a

5    summary of the facts and law upon which the City relied; vii) complete copies of any

6    minutes or audio/video recordings of all related meetings or hearings that preceded or

7    accompanied any vote; and viii) a copy of any written findings issued by the City

8    (including by the Planning Commission and City Council) or actions taken after the

9    City's last compliance report was issued;

10   e.    all documents, including records of oral or written complaints, presented in support or in

11         lieu of oral testimony offered by members of the public prior to, during, or following

12         any hearing held in relation to zoning applications regarding dwellings for persons with

13         disabilities that were decided by: i) the Planning Commission; or ii) the City Council;

14   f.    copies of any changes to the City of San Jacinto Code of Ordinances relating to or

15         affecting any housing for persons with disabilities enacted after the City's last

16         compliance report was issued.

17   37.    Throughout the term of this Decree, the Defendant shall retain all records relating to

18   implementation of all provisions of this Decree. The United States shall have the opportunity to

19   inspect and copy any such records after giving reasonable notice to Counsel for the Defendant.

20   **VII. COMPENSATION OF AGGRIEVED PERSONS**

21   38.    The Defendant shall pay the sum of three hundred ninety thousand, five hundred

22   ninety-nine dollars and zero cents ($390,599.00) in compensation for all damages, attorney's fees,

23   and costs related to claims brought by private plaintiffs Rajeeyah Bilal-Varney, Yvonne Carter, and

24   Aurora Beltran. The payment described in this Paragraph shall be made out to the Attorney-Client

25   Trust Account of Brancart & Brancart and sent within fourteen (14) days after the entry of this

26   Decree to Brancart & Brancart, Attn. Chris Brancart, 8205 Pescadero Road, Loma Mar, California

27   94021. Brancart & Brancart shall provide Defendant with its Taxpayer Identification Number prior

28   to receiving payment from Defendant.

39.    Upon receipt of the payment described in Paragraph 38, counsel for Private Plaintiffs shall provide the Defendant with signed releases in the form of Exhibit D from Rajeeyah Bilal-Varney, Yvonne Carter, and Aurora Beltran.

40.    The Defendant shall pay the sum of three hundred fifty-six thousand dollars and no cents ($356,000) to individuals, listed in Exhibit E, whom the United States has identified as "aggrieved persons" within the meaning of Section 802(i) of the FHA, 42 U.S.C. § 3602(i). The United States will provide to the Defendant the Social Security Number or Taxpayer Identification Number for each aggrieved person. The first two checks to be issued from the sum referenced herein to persons agreed to by the parties, shall be delivered to the United States within fourteen (14) days after the entry of this Decree. Checks made out to the remaining aggrieved persons for one-half of the payment allotted to each shall be delivered to the United States on or before June 30, 2014, and checks made out for the second one-half of the payments to those persons shall be delivered to the United States on or before August 30, 2014. The checks shall be mailed via overnight courier to: Chief, Housing and Civil Enforcement Section, Civil Rights Division, U.S. Department of Justice, Suite 7002, 1800 G Street, N.W., Washington, D.C. 20006. The checks should be enclosed with a cover letter reflecting the case caption and number and the following "DJ" number: 175-12C-626.

41.    When counsel for the United States has received the checks from the Defendant and a signed release in the form of Exhibit D from each aggrieved person, counsel for the United States shall deliver the signed releases to counsel for the Defendant. No aggrieved person shall be paid until he or she has executed and delivered to counsel for the United States a release in the form of Exhibit D.

## VIII. CIVIL PENALTY

42.    On or before August 30, 2014 and after entry of this Decree, the Defendant shall pay a total of ten thousand dollars ($10,000) to the United States Treasury as a civil penalty pursuant to 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest. The payment shall be in the form of an electronic fund transfer pursuant to written instructions to be provided by the United States.

43. In the event that the Defendant, its agents, or its employees engage in any future violation(s) of the FHA, as against persons with disabilities or perceived disabilities, such violation(s) shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).

## IX. JURISDICTION AND SCOPE OF DECREE

44. The parties stipulate and the Court finds that the Court has personal jurisdiction over the Defendant for purposes of this civil action, and subject matter jurisdiction over the United States' claims in this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 3613, 3614(a), 3614(b) and 12133.

45. This Consent Decree shall remain in effect for a period of five (5) years from the date of entry. The Court shall retain jurisdiction over the action for the duration of the Decree for the purpose of enforcing its provisions and terms, after which time the case shall be dismissed with prejudice.

## X. ENFORCEMENT OF THIS DECREE

46. Any time limits for performance imposed by this Decree may be extended by mutual written agreement of the parties.

47. The parties shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Decree prior to bringing such matters to the Court for resolution. However, in the event of a failure by the Defendant to perform in a timely manner any act required by this Decree, or otherwise to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including but not limited to an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorneys' fees which may have been occasioned by the violation or failure to perform.

48. The parties agree that as of the date of entry of this Consent Decree, litigation is not "reasonably foreseeable" concerning the matters described in Section I. To the extent that any party previously implemented a litigation hold to preserve documents, electronically stored information or things related to matters described in Section I, the party is no longer required to maintain such a litigation hold. Nothing in this Paragraph relieves the Defendant of its obligations to comply with the

1    terms of this Consent Decree, including the reporting requirements set forth in Paragraphs 31-36, and

2    the document retention provision in Paragraph 37.

3         49.    Except as otherwise provided herein, each party shall bear its own costs and fees

4    associated with this litigation.

5    **IT IS SO ORDERED:**

6    This 16TH day of June, 2014.

7

8

9    _____

10                        THE HONORABLE TERRY J. HATTER, JR.
                         United Stated District Judge
11

12   CC: FISCAL

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17

# EXHIBIT "A"

STATE OF CALIFORNIA   )                    ORDINANCE NO. 14-03
COUNTY OF RIVERSIDE ) ss
CITY OF SAN JACINTO   )

**AN ORDINANCE OF THE CITY COUNCIL OF THE CITY OF SAN JACINTO AMENDING THE SAN JACINTO DEVELOPMENT CODE, REGARDING CONGREGATE LIVING FACILITIES AND GROUP HOMES FOR PERSONS WITH DISABILITIES**

**WHEREAS,** the City of San Jacinto has filed an application for an Ordinance Amendment, as described in the title of this Ordinance. Hereinafter, the subject Ordinance Amendment request shall be referred to as "the Application"; and

**WHEREAS,** on the 27th day of March, 2014, the Planning Commission of the City of San Jacinto conducted a duly noticed public hearing on the Application and concluded said hearing on that date, and recommended to the City Council that the associated Ordinance Amendment; and

**WHEREAS,** on the 15th day of April, 2014, the City Council of the City of San Jacinto conducted a duly noticed public hearing on the Application and concluded said hearing on that date, and introduced Ordinance Amendment; and

**WHEREAS,** based upon the facts and information contained in the written and oral reports for the application, the City Council finds that the proposed Ordinance could not result in a direct or reasonably foreseeable indirect physical change in the environment and that the project is not subject to CEQA in accordance with Section 15060(c)(2) of the California Environmental Quality Act; and

**WHEREAS,** all legal prerequisites to the adoption of this Ordinance have occurred.

**THE CITY COUNCIL OF THE CITY OF SAN JACINTO DOES HEREBY ORDAIN AS FOLLOWS:**

**Section 1.**   A new definition contained within Section 17.800.080 of the San Jacinto Development Code (Definitions, "G") is hereby added to read as follows:

"Group Home for Persons with Disabilities means any residence or dwelling, other than a hotel or motel, whose primary purpose is serving one or more persons with disabilities."

18
Page 1 of 4

**Section 2.**   The definition of "Congregate Living Facility" contained within Section 17.800.040 of the San Jacinto Development Code (Definitions, "C") is hereby is amended to read as follows:

"**Congregate Living Facility (Land Use).** A residence or dwelling, other than a hotel or motel, wherein two or more rooms, with or without individual or group cooking facilities, are rented to individuals under separate rental agreements or leases, either written or oral, whether or not an owner, agent, or rental manager is in residence, in order to preserve the residential character of the neighborhood.  Does not include a congregate care facility (see "Community Care Facility") that is properly licensed by the State of California, and does not include an organizational house (see "Organizational House"), and does not include a group home for persons with disabilities (see "Group Home for Persons with Disabilities")."

**Section 3.**   **Renumbering.**  The subsequent definitions contained in Title 17, Article 8 (Definitions) are and shall be renumbered accordingly.

**Section 4.**   A new Section 17.215.050 is hereby added to the San Jacinto Development Code:

"**Section 17.215.050 – Group Home for Persons with Disabilities.**  Notwithstanding any provision contained in this Development Code to the contrary, group homes for persons with disabilities shall be deemed a permitted use in all residential zone districts within the City."

**Section 5.**   Table 2-2, Allowed Uses and Permit Requirements for Residential Zones is amended by adding the following row:

| Land Use Category | | RE | RR | RL | RM | RMH | RH | RVH |
|---|---|---|---|---|---|---|---|---|
| Group Homes for Persons with Disabilities | | P | P | P | P | P | P | P |

**Section 6.**   **Severability.**  Should any provision, section, paragraph, sentence or word of this chapter be determined or declared invalid by any final court action in a court of competent jurisdiction or by reason of any preemptive legislation, the remaining provisions, sections, paragraphs, sentences or words of this chapter shall remain in full force and effect.

24438.10076\8618647.1

**Section 7.**   **Effective Date.**  This ordinance shall take effect and be in full force on the 30th day from and after its second reading.

**Introduced** at a regular meeting of the City Council on the 15th day of April, 2014.

**PASSED, APPROVED AND ADOPTED** at a regular meeting of the City Council on the 6th day of May, 2014 by the following vote:

|          |                                       |
|----------|---------------------------------------|
| Ayes:    | Bartel, Kotyuk, Miller, Ruiz, Ledezma |
| Nays:    | None                                  |
| Absent:  | None                                  |
| Abstain: | None                                  |

City of San Jacinto

*Alonso L. Ledezma*
Alonso Ledezma, Mayor

ATTEST:

*Richard Miller*
Richard Miller, City Clerk

20
Page 3 of 4

**CERTIFICATION**

**STATE OF CALIFORNIA )**
**COUNTY OF RIVERSIDE)ss**
**CITY OF  SAN JACINTO )**

I, Richard Miller, hereby certify that the attached is a true copy of Ordinance No. 14-03 introduced by the City Council of the City of San Jacinto, California, at a regular meeting held April 15, 2014.  Ordinance No. 14-03 was approved, passed and adopted at a regular meeting held the 6th day of May, 2014.

Witness my hand and official seal of the City of San Jacinto this 6th day of May, 2014.

_____
Richard Miller, City Clerk

24438.10076\8618647.1

Page 4 of 4

21

22

**EXHIBIT "B"**

STATE OF CALIFORNIA )                          **ORDINANCE NO. 14-04**
COUNTY OF RIVERSIDE ) ss
CITY OF SAN JACINTO   )

**AN ORDINANCE OF THE CITY COUNCIL OF THE CITY OF SAN JACINTO AMENDING THE SAN JACINTO DEVELOPMENT CODE (DEVELOPMENT CODE AMENDMENT NO. 2-14), REGARDING REASONABLE ACCOMMODATION**

**WHEREAS,** the City of San Jacinto has filed an application for an Ordinance Amendment, as described in the title of this Ordinance.   Hereinafter, the subject Ordinance Amendment request shall be referred to as "the Application"; and

**WHEREAS,** on the 27th day of March, 2014, the Planning Commission of the City of San Jacinto conducted a duly noticed public hearing on the Application and concluded said hearing on that date, and recommended to the City Council that the associated Ordinance Amendment; and

**WHEREAS,** on the 15th day of April, 2014, the City Council of the City of San Jacinto conducted a duly noticed public hearing on the Application and concluded said hearing on that date, and introduced Ordinance Amendment; and

**WHEREAS,** based upon the facts and information contained in the written and oral reports for the application, the City Council finds that the proposed Ordinance could not result in a direct or reasonably foreseeable indirect physical change in the environment and that the project is not subject to CEQA in accordance with Section 15060(c)(2) of the California Environmental Quality Act; and

**WHEREAS,** all legal prerequisites to the adoption of this Ordinance have occurred.

**THE CITY COUNCIL OF THE CITY OF SAN JACINTO DOES HEREBY ORDAIN AS FOLLOWS:**

**Section 1.**   Chapter 17.625 — Reasonable Accommodation of   the San Jacinto Development Code is hereby amended to read as follows:

"**17.625.010 — Purpose**
It is the policy of the City of San Jacinto to provide individuals with disabilities reasonable accommodation in its rules, policies, practices, and procedures to ensure the equal access to housing and facilitate the development of housing for individuals with disabilities in compliance with the California Fair Employment and Housing Act, the Federal Fair Housing Act, Section 504 of the Rehabilitation Act, and the Americans with Disabilities Act (referred to in this Chapter as the "Acts"). This Chapter provides a procedure for making requests for reasonable accommodations

23

in land use, zoning and building regulations, policies, practices, and procedures of the jurisdiction to comply fully with the intent and purpose of the fair housing laws.

Nothing in this Chapter requires persons with disabilities or operators of group homes for persons with disabilities acting or operating in accordance with applicable zoning, licensing, or land use laws or practices to seek reasonable accommodation under this Chapter.

### 17.625.020 — Applicability

A.   Eligible applicants.

    1.   A request for reasonable accommodation may be made by any person with a disability, his or her representative (e.g. family member, care provider, etc.), or a provider of housing for persons with disabilities in the City's land use and zoning regulations, policies, or practices when the application of such may act as a barrier to affording such person(s) equal opportunity to use and enjoy a dwelling.

    2.   A person with a disability is a person who has a physical or mental impairment that limits one or more major life activities, anyone who is regarded as having this type of impairment or anyone who has a record of this type of impairment. While a person recovering from substance abuse is considered a person with a disability, a person who is currently engaging in the current illegal use of controlled substances is not.

    3.   This Chapter is intended to apply to those persons who are defined as disabled or handicapped under the Acts.

B.   Eligible requests.

    1.   A request for reasonable accommodation may include a modification or exception to the rules, standards and practices for the siting, development, and use of housing or housing-related facilities that would eliminate regulatory barriers and provide a person with a disability equal opportunity to a dwelling of his or her choice.

    2.   A request for a reasonable accommodation shall comply with Section 17.625.030.

    3.   The City will provide the assistance necessary to an applicant in making a request for reasonable accommodation. A request by an applicant for reasonable accommodation may be made orally or in writing. It is usually helpful for all parties if the request is made in writing as it will help avoid misunderstandings and keep an accurate record of the request. The City shall assist the applicant with furnishing all information maintained by the City as a public record, such as City ordinances, policies, rules, and

            regulations necessary for processing the reasonable accommodation request.

4.      Notice of the availability of the reasonable accommodation shall be prominently displayed at all public information counters in the City's Community Development Department, and the City Clerk's office. Forms for requesting reasonable accommodations shall be available to the public in the Community Development Department or upon request.

5.      Should the information provided by the applicant include medical information or records of the applicant, including records indicating medical condition, diagnosis or medical history of the applicant, the City, to the extent allowed by law, shall treat such information as confidential information of the City. The City shall provide written notice to the Applicant, and any person designated by the Applicant to represent the Applicant in the application proceeding, of any request received by the City for disclosure of the medical information or documentation which the Applicant has provided to the City. The City will cooperate with the Applicant, to the extent allowed by law, in actions initiated by the Applicant to oppose the disclosure of such medical information or documentation.

## 17.625.030 — Application Requirements

A.     Application. The Community Development Department shall provide applicants for a reasonable accommodation with an application form eliciting the following information:

1.      The applicant's name, address and telephone number;

2.      Name, address, and telephone number of property owner and the current address for which the request is being made;

3.      The current actual use of the property;

4.      The basis for the claim that the applicant is considered disabled under the Acts or provides housing for persons considered disabled under the Acts. (For example, an individual applicant may submit a letter by the individual himself or herself containing information showing that he or she is under 65 years of age and receives Supplemental Security Income or Social Security Disability Insurance benefits, or from a doctor or other medical professional, a peer support group, a non-medical service agency, or reliable third party who is in a position to know about the individual's disability. Only that information necessary to evaluate the reasonable accommodation shall be requested. In most cases, an individual's medical records or detailed information about the nature of a person's disability is not necessary for this inquiry. All such information shall be

retained in a manner so as to respect privacy rights of the applicant and shall not be made available for public inspection);

5.     The Development Code provision, regulation or policy from which reasonable accommodation is being requested;

6.     Explanation why the reasonable accommodation is necessary to make specific property available for the individual.

The Department shall assist the applicant in completing the form, as necessary, or, shall elicit oral information from the applicant necessary for the Department to complete the form itself.  In the event the Department completes the form by eliciting oral information from the applicant, the Department shall read the completed form to the applicant to ensure its accuracy and shall provide a copy of the completed form to the applicant.

A reasonable accommodation shall not affect an individual's obligations to comply with other applicable regulations not at issue in the requested accommodation.

**17.625.040 — Review Authority**
A request for a reasonable accommodation shall be reviewed, and a determination shall be made, by the Director.

**17.625.050 — Review Procedures**
A.     Director's review. The Director shall make a written determination within 30 days following the submittal of a complete application and either approve, approve with modifications, or disapprove a request for a reasonable accommodation in compliance with Section 17.625.060 (Findings and Decision), below.

B.     Findings and Decision. The written determination to approve or disapprove the request for reasonable accommodation shall be made in compliance with Section 17.625.060 (Findings and Decision), below.

C.     Stays. If necessary to reach a determination on the request for reasonable accommodation, the reviewing authority may request further information from the applicant consistent with fair housing laws, specifying in detail the information that is required. In the event that a request for a reasonable accommodation is made, the 30-day period to issue a decision is stayed until the applicant responds to the request.

**17.625.060 — Findings and Decision**

A.   Findings. The written decision to approve or disapprove a request for reasonable accommodation that will be consistent with the Acts and shall be based on consideration of all of the following factors:

  1.   Whether the housing, which is the subject of the request, will be used by one or more individuals with a disability as defined under the Acts;

  2.   Whether the request for a reasonable accommodation is necessary to make specific housing available to an individual with a disability under the Acts;

  3.   Whether the requested reasonable accommodation would impose an undue financial or administrative burden on the City.   The determination of undue financial and administrative burden will be done on a case-by-case basis involving various factors.;

  4.   Whether the requested reasonable accommodation would fundamentally alter the nature of a City program or law, including but not limited to land use and zoning;

  5.   Should the City determine that the applicant's initial request would impose an undue financial or administrative burden on the City, or fundamentally alter a City program or law, it may propose an alternative accommodation that would provide an equivalent benefit.   In the event the City makes a determination not to accommodate an applicant's initial request, this determination shall be documented.

B.   Written decision. The written decision on the request for a reasonable accommodation shall include the reviewing authority's findings and any other relevant information upon which the decision is based. All written decisions shall give notice of the applicant's right of appeal and to request reasonable accommodation in the appeals process in compliance with Chapter 17.715 (Appeals), provided however, that the appeal period shall be extended to thirty (30) days, rather than fifteen (15) days. The notice of decision shall be sent to the applicant by certified mail.

C.   Appeal. The written decision of the reviewing authority shall be final unless appealed in compliance with Chapter 17.715 (Appeals).

**17.625.070 — Rescission of Approval of Reasonable Accommodation**
Rescission. A grant or grant with modifications made in compliance with this Chapter may be conditioned to provide for its rescission or automatic expiration under appropriate circumstances (e.g., the individual defined as disabled under the Acts vacates the subject site, etc.)."

**Section 2.**   **Severability.** Should any provision, section, paragraph, sentence or word of this chapter be determined or declared invalid by any final court action in a court of competent jurisdiction or by reason of any preemptive

27

legislation, the remaining provisions, sections, paragraphs, sentences or words of this chapter shall remain in full force and effect.

**Section 3.**     **Effective Date.**   This ordinance shall take effect and be in full force on the 30th day from and after its second reading.

        **Introduced** at a regular meeting of the City Council on the 15th day of April, 2014.

        **PASSED, APPROVED AND ADOPTED** at a regular meeting of the City Council on the 6th day of May, 2014 by the following vote:

| | |
|---|---|
| Ayes: | Bartel, Kotyuk, Miller, Ruiz, Ledezma |
| Nays: | None |
| Absent: | None |
| Abstain: | None |

City of San Jacinto

Alonso Ledezma, Mayor

ATTEST:

Richard Miller, City Clerk

28

Page 6 of 7

## CERTIFICATION

**STATE OF CALIFORNIA )**
**COUNTY OF RIVERSIDE)ss**
**CITY OF  SAN JACINTO )**

    I, Richard Miller, hereby certify that the attached is a true copy of Ordinance No. 14-04 introduced by the City Council of the City of San Jacinto, California, at a regular meeting held April 15, 2014.  Ordinance No. 14-04 was approved, passed and adopted at a regular meeting held the 6th day of May, 2014.

    Witness my hand and official seal of the City of San Jacinto this 1st day of May, 2014.

Richard Miller, City Clerk

29

**Exhibit C**

**CERTIFICATION OF TRAINING AND RECEIPT OF CONSENT DECREE**

_____ I attended training on the federal Fair Housing Act and Title II of the Americans with Disabilities Act. I have had all of my questions concerning these topics answered to my satisfaction.

_____ I watched a videotape of the complete training session provided pursuant to the Consent Decree referenced below. I have had all of my questions concerning these topics answered to my satisfaction. I have also received a copy of the Consent Decree entered in United States v. City of San Jacinto, California, Civil Action No. 5:12-cv-01966-TJH-SP, filed in the United States District Court for the Central District of California, Riverside Division. I have read and understand these documents and have had my questions about these documents answered. I understand my legal responsibilities under the Consent Decree and will comply with those responsibilities. I further understand that the Court may impose sanctions on the City of San Jacinto, California if I violate any provision of this Decree.

Date: _____

Employee/Agent Name (Print): _____

Employee/ Agent Signature: _____

30

**Exhibit D**

**FULL AND FINAL RELEASE OF CLAIMS**

In consideration for the parties' agreement to the terms of the Consent Decree entered into in the matters of United States v. City of San Jacinto, California, Civil Action No. 5:12-cv-01966-TJH-SP and Bilal-Varney, et al. v. City of San Jacinto, Civil Action No. ED CV 12-02191 VAP-DTBx, as approved by the United States District Court for the Central District of California, and in consideration for the payment of $_____, I, _____, do hereby fully release and forever discharge the City of San Jacinto, California, along with its insurers, attorneys, related companies, principals, predecessors, successors, assigns, affiliates, partners, directors, officers, agents, employers, shareholders, subsidiaries, employees, former employees, heirs, executors, and administrators and any persons acting under their respective direction or control from any and all fair housing claims set forth, or which could have been set forth in the Complaint in this lawsuit that I may have had against any of them for any of City's actions or statements related to those claims through the date of the entry of the Consent Decree.

Date: _____

Signature: _____

Address:

31

1

**Exhibit E**

2

**Payments to Aggrieved Persons**

3

| Name | Amount | Payment Dates |
|------|--------|---------------|
| Rosalie Trento | $79,000 | First half by June 30, 2014, remainder by August 31, 2014 |
| Angela Nunieza | $33,000 | First half by June 30, 2014, remainder by August 31, 2014 |
| Wilma Castellanos | $20,000 | First half by June 30, 2014, remainder by August 31, 2014 |
| Estate of Mary Ann Maravilla | $15,000 | First half by June 30, 2014, remainder by August 31, 2014 |
| Robert Gable and Estate of Patricia Gable | $30,000 | First half by June 30, 2014, remainder by August 31, 2014 |
| Brian Creviston | $15,000 | First half by June 30, 2014, remainder by August 31, 2014 |
| Romy Biggs | $15,000 | First half by June 30, 2014, remainder by August 31, 2014 |
| Michael Judd | $21,000 | Within 14 days of entry of the Consent Decree |
| Ronda Moore | $30,000 | Within 14 days of entry of the Consent Decree |
| Paul Ugartechea | $26,000 | First half by June 30, 2014, remainder by August 31, 2014 |
| Ginger Hyde | $18,000 | First half by June 30, 2014, remainder by August 31, 2014 |
| Theresa Piatek | $18,000 | First half by June 30, 2014, remainder by August 31, 2014 |
| Joe Murray | $18,000 | First half by June 30, 2014, remainder by August 31, 2014 |
| Blythe Sprott | $18,000 | First half by June 30, 2014, remainder by August 31, 2014 |
| **TOTAL** | **$356,000** | |

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

32